UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11669-GAO

LEONARD S. SHERMAN d/b/a CAMBRIDGE STREET REALTY
and RSA MEDIA, INC.,
Plaintiffs,

v.

CLEAR CHANNEL OUTDOOR, INC.,
Defendant.

ORDER
July 26, 2012

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has filed a report and recommendation with respect to the respondent's Motion (dkt. no. 6) to Dismiss for failure to state a claim. After carefully reviewing the pleadings, the parties' motion papers, and the report and recommendation itself, I adopt the report and recommendation of the magistrate. Accordingly, the claims are dismissed, with the exception of the portion of Count I that alleges breach of contract relating to Clear Channel Outdoor's failure to remove its hardware from the roof and make necessary repairs, pursuant to paragraph 18 of the lease.

Accordingly, I ADOPT the recommendation. Defendant's Motion (dkt. no. 6) to Dismiss is GRANTED as to Counts II, III, IV, and V. The motion is DENIED as to Count I.

It is SO ORDERED

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LEONARD S. SHERMAN d/b/a | ) | |
| CAMBRIDGE STREET REALTY | ) | |
| and RSA MEDIA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| v. | ) | NO. 11-11669-GAO |
| | ) | |
| CLEAR CHANNEL OUTDOOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS

June 19, 2012

DEIN, U.S.M.J.

### I. INTRODUCTION

The defendant Clear Channel Outdoor, Inc. ("CCO") maintained three commercial

billboards on the roof of a building in Allston, Massachusetts, pursuant to a lease

agreement between CCO and the plaintiff Leonard Sherman ("Sherman"). Upon learning

that Sherman had entered into an agreement with CCO's competitor, the plaintiff RSA

Media, Inc. ("RSA"), which would eventually require the removal of the billboards at a

time favorable to RSA, CCO preemptively took down the billboards but continued to pay

rent under the terms of the lease. The plaintiffs then commenced this action, alleging that

by prematurely removing the billboards CCO breached its lease agreement with Sherman

(Count I), was liable for wrongful interference with contractual and advantageous

relations (Counts II and III), and committed unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A (Counts IV and V).

This matter is presently before the court on CCO's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. (Docket No. 6). While admitting that it needs to remove hardware left on the roof after the billboards were removed and pay for any related repair, CCO contends that it was not obligated to maintain the billboards so long as it continued to make the payments due under the lease. This court agrees. Therefore, and for the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the motion to dismiss (Docket No. 6) be ALLOWED IN PART, with the only claim remaining being the scope of CCO's obligations with respect to the removal of the hardware and any related repair of the roof.

## II. <u>STATEMENT OF FACTS</u>

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences. <u>See</u> <u>Cooperman v. Individual, Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999). "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for

documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). Applying this standard to the instant case, the facts relevant to the motion to dismiss can be found in the Complaint, included in Docket No. 1 ("Compl."), and the lease, attached to CCO's memorandum in support of its motion to dismiss at Docket 7-1. Thus, the relevant facts are as follows:

### The Parties

The plaintiff, Leonard Sherman, doing business as Cambridge Street Realty, owns commercial real estate located at 417-433 Cambridge Street, Allston, Massachusetts. Compl. ¶ 1. Co-plaintiff RSA, a Massachusetts corporation, is in the outdoor advertising business. Id. ¶ 2, p. 1. Similarly, the defendant CCO, a Delaware corporation, is also engaged in the business of maintaining outdoor advertising. Id. ¶ 3, p. 1. Since approximately 1956, CCO and its predecessors have operated three outdoor advertising billboard structures on the roof of Sherman's building in Allston pursuant to a series of lease extensions. Id., p. 2. During the time period relevant to this action, CCO also maintained a billboard on a parking structure in Allston owned by Jack Young Realty Trust, which is not a party to this action. Id., p. 3.

### CCO's Leases

Effective September 1, 2005, Sherman and CCO signed a five-year extension to Billboard Lease Agreement #44. Id. ¶ 4. As stated therein, CCO, as Tenant, was leasing the property "for the purpose of erecting, maintaining, operating, improving, supplement-

ing, posting, painting, illuminating, repairing, repositioning and/or removing outdoor

advertising structures, including, without limitation, fixture connections, electrical supply

and connections, panels, signs, copy and any equipment and accessories as Tenant may

place thereon (collectively, the 'Structures')." Lease ¶ 1.  The lease contained the

following two provisions relied on by the parties:

> 5.    *Tenant is the owner of the Structures and has the right to remove the*
>       *Structure within one hundred twenty (120) days following the*
>       *termination of this Lease.*  If for any reason, Tenant's Structures are
>       removed, materially damaged or destroyed, all rent payments shall
>       cease until the Structures are rebuilt.  If the Structures are removed
>       for any reason, only the above-ground portions of the Structures
>       need be removed.  Tenant has the sole right to make any necessary
>       applications with, and obtain permits from, governmental entities for
>       the construction, use and maintenance of the Structures, and
>       Landlord hereby grants Tenant a limited power of attorney for this
>       purpose.  All such permits shall remain the property of Tenant.
>       Tenant shall make every reasonable effort to rebuild or repair the
>       sign within a period of ninety (90) days from the date of damage or
>       destruction subject to local approval.
>
>                    . . . .
>
> 18.   *Lessee shall be responsible for the removal of the signs at the*
>       *expiration of this lease if a new tenancy is not created.*  Lessee will
>       also remove the supporting brackets and fastening systems that
>       secures the signs to the building underneath the roof.  Lessee will
>       also restore any penetration areas in the roof as a result of said
>       removal of the sign.  Following the removal of any Structure, Lessee
>       shall make good faith efforts to return the Property to its original
>       condition, reasonable wear and tear and uninsured casualty excepted.
>       Lessee agrees to clean the area of any debris caused by the removal
>       of the Structure.

(Emphasis added).  Under the lease, CCO was to pay the Landlord $500 per month.  Id.

¶ 3.  It is undisputed that CCO made all rental payments due under the lease.  See Compl.

-4-

¶ 41 (Sherman is only seeking rental payments after September 2010, when the lease expired). It is also undisputed that CCO still needs to remove the supporting brackets and fastening systems and to repair the roof if necessary. At issue is whether these contract provisions, which all parties agree are clear and unambiguous, permitted CCO to remove the billboards in February 2010, prior to the expiration of the lease.

CCO also had a separate agreement to maintain a billboard on a parking structure located on property owned by the Jack Young Realty Trust. Id. p. 3. That lease expired in or about December 31, 2009. Id. ¶ 13. However, the two parties continued their business relationship through January 2010, and entered into a tenancy-at-will agreement on or about January 30, 2010. Id. As detailed below, CCO cancelled this agreement on February 3, 2010 and removed its billboards from this property in February 2010 as well. Id. ¶ 14.

### The RSA Agreements

At the relevant time, CCO's competitor, RSA, was attempting to obtain approval from the city of Allston to erect a large modern billboard in Allston visible to Massachusetts Turnpike commuters. Id. p. 2. As the First Circuit has recognized, "[t]he highly regulated nature of the billboard market in the Greater Boston area makes it impossible, or at least nearly impossible, to obtain a permit to build a new billboard." RSA Media, Inc. v. AK Media Group, Inc., 260 F.3d 10, 12 (1st Cir. 2001). Consequently, in order to obtain neighborhood approval for its proposal, RSA wanted to be in a position to offer that, if its billboard proposal was approved, it would cause six existing billboards in

Allston owned by its competitors to be removed, including the CCO billboards. <u>Compl.</u>
¶¶ 9-12.  Toward this end, in 2009 RSA and Sherman entered into a written option
agreement whereby RSA paid Sherman $10,000 at signing, with $90,000 to be paid upon
the removal of CCO's billboard structures from Sherman's roof allegedly following the
expiration of CCO's lease with Sherman, and after RSA had received municipal approval
for its new billboard proposal.  <u>Id.</u> ¶ 8.  RSA entered into another agreement with Jack
Young Realty Trust, also calling for the removal of CCO's billboard after RSA received
municipal approval for its outdoor advertising proposal, and allegedly after the end of
CCO's lease.  <u>Id.</u> ¶ 9.  Apparently CCO was not informed of these arrangements at the
time they were made.

RSA presented its proposal to erect the new billboard structure and remove its
competitors' billboards to the Allston Civic Association on January 20, 2010.  <u>Id.</u> ¶ 10.
The proposal was published in several newspapers on January 28 and 29, 2010.  <u>Id.</u>
¶¶ 11-12.  Not surprisingly, CCO objected to the proposal pursuant to which its
competitor would get approval for a large new billboard structure and, in return, CCO's
billboards would be taken down.  On February 3, 2010, CCO canceled its tenancy-at-will
agreement with Jack Young Realty Trust.  <u>Id.</u> ¶ 14.  On February 4 and 5, 2010, it
informed Sherman that unless it obtained a long term lease extension it intended to
remove the billboards from Sherman's property "to thwart RSA's business proposal."  <u>Id.</u>
¶ 15.  In response, Sherman informed CCO that he would be out of the country from

February 6, 2010 through March 1, 2010, and that he would discuss the possibility of a one or two year lease with CCO upon his return. Id. ¶¶ 16-18.

Despite its alleged agreement to wait until Sherman's return, on February 8-9, 2010, CCO removed the three billboard structures from Sherman's property, excluding the under-roof support structures. Id. ¶ 19. By so doing, Sherman contends that CCO made it impossible for him to fulfill his obligations under his option agreement with RSA to obtain the removal of CCO's billboards only after CCO's lease had expired and RSA had received its municipal approval. Id. ¶¶ 32-33. In addition, by removing the billboards before the lease expiration, CCO allegedly caused RSA to suffer contract damages in the amount of $35,000, the amount it had paid the Jack Young Realty Trust. Id. ¶¶ 35-36, 58.

Sherman and RSA commenced suit against CCO on August 23, 2011 in the Suffolk County Superior Court, and the case was timely removed to this court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. In their complaint, the plaintiffs allege in Count I, for breach of contract, that "CCO's surreptitious removal of three billboard structures from the rooftop of Sherman's property approximately seven months prior to lease expiration constitutes a breach of contract." Id. ¶ 40. In Count II, for interference with contractual relations, Sherman alleges that CCO's removal of the three billboard structures interfered with Sherman's ability to perform its third-party contract with RSA. Id. ¶ 43. In addition, the removal of the structures also allegedly "permanently prevented Sherman and CCO from negotiating a new tenancy for any period subsequent to the

-7-

September 2010 expiration of Lease #44." Id. ¶ 44. In Count III, for interference with advantageous relations, RSA alleges that CCO interfered with RSA's business initiative because "CCO knew that the removal of several billboards in the area of Cambridge Street in Allston during February 2010 would severely compromise RSA's business proposal because RSA would no longer be able to offer the public (and, by extension the City of Boston's Board of Appeal) the contracted for removal of older, eyesore billboard structures in Allston in exchange for the approval of RSA's then pending proposal to install one modern (highly aesthetic) billboard structure in the area." Id. ¶ 53. In Counts IV and V, Sherman and RSA, respectively, contend that the premature removal of the billboards, which was "designed to derail RSA's outdoor advertising proposal, which would directly compete with CCO" constituted a violation of Mass. Gen. Laws ch. 93A. Id. ¶ 63; see also ¶ 69 ("CCO's surreptitious removal of its billboard structures from Sherman's property was designed to thwart RSA's outdoor advertising proposal.").

Additional facts will be provided below where appropriate.

## III.  DISCUSSION

### A.    Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the non-moving party. Cooperman, 171 F.3d at 46. Dismissal is only appropriate if the pleadings, so viewed, fail to support "'a plausible entitlement to relief.'" Rodriguez-Ortiz v. Margo Caribe,

-8-

Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). "'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)) (internal citations omitted). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.'" Id. (quoting Ashcroft, 129 S. Ct. at 1950). "This second principle recognizes that the court's assessment of the pleadings is 'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief.'" Id. (quoting Ashcroft, 129 S. Ct. at 1950) (internal quotations and citation omitted; alterations in original). Applying these principles to the instant case, this court recommends that the motion to dismiss be allowed.

## B. Breach of Contract

The critical issue in this case is whether CCO breached its contract with Sherman by removing the billboards prior to the expiration of the lease. This court concludes that

CCO was not obligated to maintain the billboards in place until the lease expired. There-fore, the breach of contract claim, Count I, should be dismissed.

The controlling principles of contract interpretation are well established. Thus, under Massachusetts law, a contract is to be construed in accordance with the "fair and reasonable meaning of its words." New England Envtl. Tech. v. Am. Safety Risk Retention Group, Inc., 738 F. Supp.2d 249, 254 (D. Mass. 2010) (citation omitted). "Where the language of a written contract is plain and unambiguous it must be construed in accordance with its ordinary and usual sense[,]" and [j]ustice, common sense, and the probable intent of the parties guide the court's construction of the agreement." Kotler v. Spaulding, 24 Mass. App. Ct. 515, 517, 510 N.E.2d 770, 772 (1987). Moreover, "[a]n omission to specify an agreement in a written lease is evidence that there was no such understanding[,]" and "[c]ovenants will not be extended by implication unless the implication is clear and undoubted." Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 701, 200 N.E.2d 248, 251 (1964). Applying these principles to the instant case compels the conclusion that there was no obligation on the part of CCO to maintain its billboards in place, much less to maintain them so that the landlord could subsequently benefit from their involuntary removal at a later date.

There is nothing in the lease which expressly requires that CCO maintain its billboards in place during the pendency of the term of the lease. Sherman relies on the lease language that provides that "Tenant [CCO] is the owner of the Structures and has the right to remove the Structure within one hundred twenty (120) days following

-10-

termination of the Lease" to argue that that is the *only* time that CCO can remove the billboards. See Lease ¶ 5; Compl. ¶ 21. However, as the lease makes clear, the tenant had the right to remove its outdoor advertising structures. Lease ¶ 1. Giving the owner of the billboards the right to remove the billboards *after* the lease period expired was clearly intended to provide the owner with a grace period in which to remove its property. In so doing, the parties ensured that CCO would have access to the roof, which it normally would not have had once the lease expired, confirmed that the billboards remained the property of CCO during this grace period, and set an outside period during which CCO must act, after which the landlord could take whatever steps were necessary to remove the structures. There is nothing in that language which logically can be read as preventing the property owner from gaining possession of its own property at any other time. The plaintiffs' interpretation strains the language of the lease beyond recognition.

Nor is there anything in the lease from which the court can imply an obligation to maintain the billboards in place. The burden is on the landlord to show that the parties intended to include such a covenant in the lease. Worcester-Tatnuck Square CVS v. Kaplan, 33 Mass. App. Ct. 499, 502, 601 N.E.2d 485, 488 (1992). In the instant matter, however, apart from the unique circumstances of this case, there is no apparent reason why the landlord would care if the billboards remained in place or were removed, provided rent was received. During oral argument, plaintiffs' counsel confirmed that the billboards provided no structural or other benefit to the building besides the rental income, and given the description of the billboards in the Complaint, the plaintiffs

-11-

obviously do not believe that the billboards have an aesthetic value. <u>See</u>, <u>e.g.</u>, <u>Compl.</u> ¶ 53. Moreover, there is nothing in the lease itself which is dependent on whether or not the billboards remain, except for the need to repair the roof upon their removal. The rent does not change and the parties' obligations are in no way altered depending on whether the billboards remain in place or not. Under such circumstances, there is no evidence from which the court could find that the parties intended to include such a requirement in the lease, and there is no basis to imply a continued obligation to maintain the billboards. <u>See</u>, <u>e.g.</u>, <u>Stop & Shop, Inc. v. Ganem</u>, 347 Mass. at 702, 200 N.E.2d at 251 (even though rent included a minimum payment amount and a percentage of sales, court will not imply a covenant requiring that tenant remain in operation at leased premises: "An apparently substantial minimum rent in an apparently complete written lease, in the absence of a showing of disparity between the fixed rent and the fair rental value, gives ground for the inference that fixed rent and the lessee's self-interest in producing sales were the only assurance of rent that the lessor required."); <u>Worcester-Tatnuck Square CVS v. Kaplan</u>, 33 Mass. App. Ct. at 503, 601 N.E.2d at 488 (where lease did not include an express obligation that CVS would remain in business on the premises, court would not imply such a covenant: "In the absence of a showing that the base rents were below market value when the lease began, or any other evidence that the parties intended to provide for an undertaking by CVS that it remain in business at the site, an omission to specify any agreement in a written lease is evidence that there was no such understanding.") (internal quotations omitted). As the <u>Stop & Shop</u> court held in language applicable here, "[t]here

-12-

is in this record no basis for implying a covenant to continue to operate beyond that time when, in the business judgment of the lessee, operations at the demised location should cease. The lessors have not shown that a reasonable person in the position of the lessors would be justified in understanding that such a covenant was intended and hence implied." Stop & Shop, Inc. v. Ganem, 347 Mass. at 704, 200 N.E.2d at 252-253 (internal punctuation and citations omitted). Therefore, CCO's decision to take down the billboards while continuing to pay rent does not constitute a breach of the lease.[1]

### C.   Interference with Contractual Relations

In Count II of the Complaint, Sherman alleges that CCO is liable for interference with contractual relations because CCO's removal of the billboards interfered with Sherman's ability to perform its contract with RSA, and allegedly prevented Sherman from entering into a new tenancy for any period of time with CCO after the lease expired. Compl. ¶¶ 43-44.[2] As detailed herein, this Count fails to state a claim and should be dismissed.

"To establish intentional interference with contractual or business relations, the plaintiffs must show (1) the existence of a contract or a business relationship which

---

[1] In light of this conclusion, this court will not address CCO's alternate arguments including, without limitation, its contention that the plaintiffs have failed to establish damages.

[2] Sherman does not explain in the Complaint why the removal of the billboards "permanently prevented Sherman and CCO from negotiating a new tenancy," Compl. ¶ 44, but the court will not explore this deficiency further because, as detailed above, the claim fails for other reasons. This court does note, however, that it is well established that a party "cannot be liable for tortious interference with his own contract." Brown v. Armstrong, 957 F. Supp. 1293, 1305 (D. Mass. 1997), and cases cited.

contemplated economic benefit; (2) the defendants' knowledge of the contract or business relationship; (3) the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages." <u>Swanset Dev. Corp. v. City of Taunton</u>, 423 Mass. 390, 397, 668 N.E.2d 333, 338 (1996). The claim that CCO wrongfully interfered with the Sherman/RSA contract must fail since the plaintiff cannot establish improper purpose or motive.

Since CCO's decision to remove the billboards was not in breach of its lease agreement, it did not use "improper means." <u>See</u> <u>Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.</u>, 62 Mass. App. Ct. 34, 39-40, 815 N.E.2d 241, 246 (2004) (where challenged conduct did not constitute a breach of contract there was "no basis . . . for a finding that the defendant employed any means that were improper."). Moreover, as alleged in the Complaint, CCO acted for its own business purposes to defeat its competitor's plans. This is not an actionable improper motive. It is well established that "the improper motive or malevolence required is actual malice, a spiteful, malignant purpose, *unrelated to the legitimate corporate interest*. The motivation of personal gain, including financial gain, however, generally is not enough to satisfy the improper interference requirement. Similarly, personal dislike will not warrant an inference of the requisite ill will." <u>King v. Driscoll</u>, 418 Mass. 576, 587, 638 N.E.2d 488, 494-95 (1994) (emphasis added) (internal quotations and citations omitted). Accepting the allegations of the complaint as true, the plaintiffs have failed to establish that CCO acted with improper means or motive and, therefore, Count II should be dismissed. <u>See also</u> <u>Hunneman Real</u>

-14-

Estate Corp. v. Norwood Realty, Inc., 54 Mass. App. Ct. 416, 428-29, 765 N.E.2d 800,

809 (2002) (actions taken in order to further a party's competitive interest does not

constitute improper motive); Am. Private Line Servs., Inc. v. E. Microwave, Inc., 80 F.2d

33, 37 (1st Cir. 1992) (where party's motivation was its own financial benefit, it was not

acting with an improper motive).

### D.   Interference with Advantageous Relations

In Count III, RSA alleges that CCO wrongfully interfered with its advantageous

relations in that it "severely compromise[d]" its business proposal to gain approval of its

own billboard. Compl. ¶ 53. This count, too, fails to state a claim and should be

dismissed.

As discussed above, to establish a claim of tortious interference with an advan-

tageous business relationship, "[t]he plaintiff has the burden of demonstrating that a

business relationship from which the plaintiff might benefit existed; the defendant knew

of the relationship; the defendant intentionally interfered with the relationship for an

improper purpose or by improper means; and the plaintiff was damaged by that

interference." Pembroke Country Club, Inc., 62 Mass. App. Ct. at 38, 815 N.E.2d at 245.

For the reasons detailed above, the plaintiffs have failed to establish that CCO acted with

an improper purpose or by improper means, thereby mandating the dismissal of this

Count. In addition, RSA has failed to allege that a specific business relationship existed

between itself and the permitting authorities which would support this claim. RSA "may

not speculate about future business relationships when alleging this tort;" rather, it must

base its claim on "a specific business relationship that was interfered with by [CCO.]"
Singh v. BC/BS of Mass., Inc., 308 F.3d 25, 47-48 (1st Cir. 2002) (internal quotations
omitted). The mere possibility that its proposal would be accepted by the permitting
authority is not sufficient. Therefore, for all these reasons, Count III should be dismissed.

**E.    Unfair and Deceptive Acts and Practices**

In Counts IV and V of the Complaint, the plaintiffs allege that CCO committed
unfair and deceptive acts and practices by removing its billboards and thereby preventing
the consummation of the Sherman/RSA contract and interfering with RSA's attempts to
obtain approval for its billboard, all in violation of Mass. Gen. Laws ch. 93A. Since there
was nothing improper in CCO's decision to remove its billboards, this court recommends
that these Counts be dismissed as well.

"Chapter 93A is a statute of broad impact which creates new substantive rights and
provides new procedural devices for the enforcement of those rights. The relief available
under c. 93A is neither wholly tortious nor wholly contractual in nature, and is not
subject to the traditional limitations of preexisting causes of action. It makes conduct
unlawful which was not unlawful under the common law or any prior statute. However,
some form of deceptive or unfair conduct must be alleged." States Res. Corp. v. The
Architectural Team, Inc., 433 F.3d 73, 84 (1st Cir. 2005) (internal punctuation and
citations omitted). As detailed above, CCO acted within its contractual rights and for its
commercial benefit. At most, it thwarted its competitor's plans which required the
landlord to refuse to renew the leases to which CCO or its predecessors had been a party

-16-

for decades. "On this record, the evidence being insufficient to establish improper motive or improper means on the part of the defendant, it is likewise insufficient to establish an unfair method of competition or an unfair or deceptive act or practice." Pembroke Country Club, Inc., 62 Mass. App. Ct. at 41, 815 N.E.2d at 247.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the motion to dismiss (Docket No. 6) be ALLOWED IN PART, with the only claim remaining being the scope of CCO's obligations with respect to removal of the hardware and any related repair of the roof. [3]

/ s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

---

[3] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).